UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

PAMELA WHITZELL,
Plaintiff

v.

MICHAEL J. ASTRUE, as he is Commissioner, Social Security Administration,
Defendant.

CIVIL ACTION
NO. 09-11026-WGY

MEMORANDUM OF DECISION

YOUNG, D.J. July_28, 2010

## I. INTRODUCTION

Pamela Whitzell brings this action against Michael J. Astrue, Commissioner of the Social Security Administration (the "Commissioner"), seeking judicial review of the Commissioner's final decision denying Whitzell's claim for Supplemental Security Income payments ("SSI"). Whitzell argues that in determining the level of Whitzell's disability the Commissioner failed to give appropriate weight to the medical opinion of Whitzell's treating physician, Dr. Tessier.

### A. Procedural Posture

On October 13, 2006, Whitzell applied for SSI alleging disability as of August 4, 2001. Administrative Record ("A.R.") 20. Whitzell's application was denied by the Social Security

Administration initially and upon reconsideration. Compl. ¶ 3. She filed a timely request for a hearing. Id. The hearing was held in Providence, Rhode Island and the hearing officer denied benefits in a decision dated February 2, 2009. Id. ¶ 5. On April 24, 2009 the Decision Review Board affirmed the decision. Id. ¶ 6.

On June 5, 2009 Whitzell filed her complaint, ECF No. 1, with this Court. On April 21, 2009, she moved for an order reversing decision of the Commissioner. Pl.'s Mot., ECF No. 12. On June 4, 2009, the Commissioner filed a motion for an order affirming the decision, ECF No. 15.

**B. Facts**

Whitzell challenges only that portion of the Commissioner's decision that declined to afford controlling weight to the opinions of a treating psychologist as to Whitzell's functional mental abilities to perform work-related activities. Accordingly, only so much of the record as pertains to Whitzell's mental impairment is summarized herein.

1. Dr. Rizwan Mufti

Whitzell was seen on December 20, 2005 by Dr. Rizwan Mufti, a psychiatrist, for anxiety and depression. A.R. 168-69. Whitzell reported a chronic history of anxiety and depression, with symptoms of tiredness, decreased energy, and racing thoughts, but no suicidal ideation. Id. at 168. She reported no

psychiatric hospitalizations. Id. at 168. On mental status examination, Whitzell was alert and cooperative, with normal speech and depressed mood, and poor insight and judgment. Id. at 169. Dr. Mufti diagnosed Whitzell with bipolar I disorder and assessed her global assessment of functioning ("GAF") at 55, indicative of moderate limitations in functioning. Id. at 169.

Whitzell returned for further treatment with Dr. Mufti approximately every two months through at least September 18, 2008. Id. at 162-67, 204-10, 217. On August 1, 2006, Whitzell reported that her depression was improved with medication and she felt better, although she had recently lost her boyfriend of twenty-one years. Id. at 163. On December 21, 2006, Whitzell told Dr. Mufti that she felt "OK" although she was "stressed out" due to the holidays and was depressed about not having her daughter with her. Id. at 205. On August 29, 2007, Dr. Mufti noted reduced depression but increased mood liability and racing thoughts; Whitzell was alert and oriented with normal speech, depressed mood, and anxious affect. Id. at 209. He assessed Whitzell's condition as stable. Id. On October 24, 2007, Dr. Mufti indicated that Whitzell's symptoms of depression, mood lability, and racing thoughts were decreased, with increased sleep, "OK" mood, normal speech, and appropriate affect, although she had increased anxiety and racing thoughts. Id. at 208.

On December 6, 2007, Whitzell reported to her primary care

physician, Dr. Christos Kapogiannis, that she was seen by Dr. Mufti, had an upcoming follow-up with Dr. Mufti, and had "no concerns at this time." Id. at 222. On March 6, 2008, Dr. Kapogiannis noted that Whitzell was still being seen by Dr. Mufti for her depression and anxiety, which "appears to be stable." Id. at 234.

2. Dr. Wayne Tessier

Whitzell saw Dr. Wayne Tessier, a psychologist, on February 8, 2007 reporting problems with her daughter and her daughter's boyfriend. Id. at 239. She was coaching her son's Little League team but thought she might stop, because she had trouble dealing with the other children's parents. Id. at 239. Whitzell complained of difficulty focusing on day-to-day demands without feeling overwhelmed, and continued to struggle emotionally with the physical limitations of chronic medical conditions. Id. at 239. Dr. Tessier diagnosed Whitzell with chronic, late onset post-traumatic stress disorder and recurrent and severe depression with a GAF of 45, indicative of severe difficulties in functioning. Id. at 239.

Whitzell returned to Dr. Tessier on May 7, 2007 reporting continued difficulties with her daughter and the same symptoms. Id. at 242. When Whitzell returned to Dr. Tessier on September 6, 2007, she described she had had a busy summer coaching Little League, although she had a hard time concentrating. Id. at 244.

On September 25, 2007, Whitzell stated that she was "busy with my kids as usual." Id. at 245. On October 15, 2007, Whitzell reported that money had been tighter than usual, and that she had been more depressed lately. Id. at 247. Although she felt it would be "OK" if she died, she would not do anything to harm herself because of her children and grandchildren. Id. at 247. On March 3, 2008, Whitzell returned to Dr. Tessier informing that she had been arrested for buying marijuana. Id. at 250. She continued treatment with Dr. Tessier on October 21, 2008, id. at 252, Dr. Tessier continued to record the same symptoms and assessed a GAF of 45. Id.

On December 12, 2008, Dr. Tessier completed a Supplemental Questionnaire As To Residual Functional Capacity, indicating moderately severe limitations in the abilities to understand, remember and carry out instructions and to perform simple or repetitive tasks, as well as severe limitations in responding appropriately to supervision and co-workers, responding to customary work pessures, and performing complex and varied tasks. Id. at 264-65.

3. Dr. Mark Sokol

On January 17, 2006, Whitzell underwent a consultative psychological evaluation with state disability determination services consultant psychologist Dr. Mark Sokol. Id. at 142-45. Whitzell reported that she had an eighth-grade education and a

general equivalency diploma, that she lived with her five children ranging from seven to eighteen years of age, and that she had been unemployed since 2001 when she left work as a certified nurses' assistant due to back pain. Id. at 142. She reported depressive symptoms of crying spells, loss of her usual interests, diminished pleasure, occasional suicidal ideation, and a tendency to isolate. Id. at 143. Whitzell stated that her depression was precipitated by the loss of a three-week-old child to SIDS seventeen years before, as well as her difficult upbringing in an alcoholic family. Id. Whitzell also complained of anxiety-related symptoms of irritability, restlessness, and difficulty concentrating. Id. On mental status examination, Whitzell was cooperative and responsive to questions, with grossly intact social and language skills, intelligible and fluent speech, and coherent, goal-directed thought processes. Id. Her affect was depressed, with mildly depressed underlying mood. Id. at 144. She was alert and oriented to person, place, and time, with grossly intact attention and concentration, and recent and remote memory skills. Id. Whitzell's intellectual functioning appeared to be in the average range; she had poor insight and fair judgment. Id. Dr. Sokol diagnosed her with major depressive disorder without psychotic features. Id. at 145. He suggested that psychologically, Whitzell was able to understand simple instructions, perform simple rote tasks under

ordinary supervision, maintain attention and concentration for job-related tasks, and make appropriate job-related decisions. Id. at 144. She could perform job tasks consistently, but might have mild pace problems due to fatigue and mild to moderate problems with social interaction. Id. She could relate adequately with co-workers and supervisors, however, and deal appropriately with normal workplace stressors. Id. Dr. Sokol estimated Whitzell's GAF at 60, indicative of moderate difficulties in functioning. Id.

4. Dr. Patricia Barr

On December 26, 2006, non-examining state disability determination service consultative psychologist Patricia Barr, Ph.D., reviewed Whitzell's records to date and completed a Psychiatric Review Technique Form. Id. at 181-94. Dr. Barr assessed a severe affective disorder; specifically, depressive symptoms, resulting in mild restriction of activities of daily living and maintaining concentration, persistence, and pace, as well as moderate limitations in maintaining social functioning. Id. at 184, 191. Dr. Barr also completed a Mental Residual Functional Capacity Assessment, indicating moderate limitations in Whitzell's ability to: understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; complete a normal workday without symptomatic interruptions at a consistent pace without unreasonable breaks;

and accept instructions and respond appropriately to criticism from supervisors. Id. at 177-78. Dr. Barr elaborated that Whitzell remained able to understand and remember simple instructions, focus and persist on simple tasks at a reasonable pace throughout the workday, and handle simple social interactions. Id. at 179. She specifically noted Whitzell's ability to care for her children, handle simple meals and chores, drive, and manage money and a computer. Id.

5. Dr. John Parsons

On December 5, 2008, Whitzell underwent a psychological evaluation with John Parsons, Ph.D., arranged by her attorney. Id. at 254-61. Whitzell reported a history of a traumatic childhood involving physical and sexual abuse. Id. at 255-56. She had five children, and had lost a sixth to SIDS at the age of three weeks. Id. at 256. Dr. Parsons administered psychological testing, and assessed Whitzell with moderately impaired attention and concentration, and moderate problems with immediate and recent memory and intact remote memory; she was functioning in the low average range of intelligence. Id. at 258-59. He diagnosed Whitzell with bipolar II disorder and post-traumatic stress disorder, and estimated her GAF at 46. Id. at 261. He opined that Whitzell was psychologically unable to function effectively in a work environment. Id. Dr. Parsons also completed a Supplemental Questionnaire As To Residual Functional

Capacity, assessing moderately severe limitations in many areas of mental functioning, including attention and concentration in a work setting, responding appropriately to co-workers, and customary work pressures, as well as severe limitations in the abilities to respond appropriately to supervision and perform complex tasks. Id. at 237-38.

6. Hearing

A hearing on Whitzell's SSI claim was held on December 23, 2008. Id. at 18-45. Whitzell, represented by counsel, appeared and testified, as did Michael Loria, a vocational expert. Id. at 18. Whitzell testified that she had been working part-time as a volunteer Little League coach for about three years. Id. at 24. Whitzell had received her GED. Id. at 27. She had last worked as a cashier in August 2000. Id. at 28. She believed that she could not work because she was "majorly depressed every day" and would "go from one extreme to another." Id. at 29. She stated she got stressed out in public and thought people were talking about her. Id. Whitzell testified that she was seeing Dr. Mufti every two to three months for fifteen minutes at a time; she was supposed to see Dr. Tessier every two weeks but had missed appointments with him. Id. at 30. She reported that her daily activities included getting her daughter ready for school, doing some housework, watching TV, and making something quick and simple for dinner. Id. She did not read, but checked email on

the computer. Id. at 32.

The Commissioner then presented the vocational expert with a hypothetical claimant sharing Whitzell's vocational history, who was limited to exertionally light or sedentary work, and who could do only uncomplicated work tasks with breaks every two hours throughout the workday due to limitations in attention and concentration. This hypothetical claimant was also limited to dealing with the public on an occasional basis for hand-off of products or materials or exchange of non-personal work-related information, working around or dealing with co-workers occasionally but not on a continuous or physically close basis, and working occasionally with supervisors. Id. at 38-39. The vocational expert stated that while such a claimant could not perform any of Whitzell's past relevant work, she could perform the requirements of jobs such as machine operator, production inspector, or assembler, all of which existed in significant numbers regionally. Id. at 39-40. All of those jobs, however, would be ruled out with moderately severe rather than moderate limitations in attention, concentration, dealing with others, and responding to customary work pressures. Id. at 40-41, 43.

In his decision, the Commissioner gave substantial weight to the opinions of Dr. Mufti and Dr. Sokol, gave "less weight" to the opinions of Dr. Tessier and Dr. Parsons, and determined that Whitzell's mental disorders were associated with moderate

limitations in attention, concentration, dealing with others, and responding to customary work pressures. Id. at 14-15. In accordance with the vocational expert's testimony, the Commissioner held that Whitzell could perform the requirements of jobs such as machine operator, production inspector, or assembler. Id. at 15. The Commissioner concluded that Whitzell was not disabled and thus not entitled to SSI benefits. Id. at 16.

## II. ANALYSIS

### A. Standard of Review

Under 42 U.S.C. § 405(g), a district court has the power to affirm, modify, or reverse a decision of the Commissioner. The district court must make its decision based on the pleadings and transcript of the record before the Commissioner, and "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g); see Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996). The First Circuit has clarified this standard as requiring a court to uphold the Commissioner's findings if "a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (quoting Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir.

1981)). As it is the role of the Commissioner to draw factual inferences, make credibility determinations, and resolve conflicts in the evidence, the Court must not perform such tasks in reviewing the record. Id. Complainants face a difficult battle in challenging the Commissioner's determination because under the substantial evidence standard, the Court must uphold the Commissioner's determination, "even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987).

**B. Social Security Disability Standard**

An individual is considered disabled if she is "[unable] to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Social Security Administration promulgated a five-step sequential analysis to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520. The hearing officer must determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or medically equals an impairment listed under 20 C.F.R. Part 404, Subpart P, Appendix 1; (4)

whether the claimant has the residual functional capacity to perform his past relevant work; and (5) whether the impairment prevents the claimant from doing any other work considering the claimant's age, education, and work experience. Id.

The claimant bears the burden in the first four steps to show that she is disabled within the meaning of the Act. Goodermote v. Sec'y of Health & Human Servs., 690 F.2d 5, 7 (1st Cir. 1982) (citing Sherwin v. Sec'y of Health & Human Servs., 685 F.2d 1, 2 (1st Cir. 1982)). Once the claimant has established that she is unable to return to her former employment, the burden shifts to the Commissioner to prove the fifth step, that the claimant is able to engage in substantial gainful activity that exists in significant numbers in the national economy. Id.

**D. Challenges to the Hearing Officer's Decision**

The Commissioner determined that Whitzell suffered from depression, bipolar disorder, and post-traumatic stress disorder. A.R. 10. He also decided that she had the residual functional capacity to perform the exertional and non-exertional requirements of work except for a "moderate" limitation in the ability to deal appropriately with the public, coworkers or supervisors; a "moderate" limitation in ability to maintain attention and concentration; and a "moderate" limitation in dealing with the ordinary requirements of attendance, perseverance and pace. Id. at 12. In making that determination,

the Commissioner relied on the opinions of Dr. Mufti, Dr. Barr, and Dr. Sokol, giving "less weight" to the opinions of Dr. Tessier and Dr. Parsons. Id. at 14-15. Further, based on the testimony of a vocational expert, the Commissioner determined that there was a substantial number of jobs in the national economy that Whitzell was able to perform, such as machine operator, production inspector, assembler, and packager. Id. at 16. Therefore, Commissioner concluded that Whitzell was not disabled under the Social Security Act and was not entitled to receive SSI benefits. Id.

It is the Commissioner's obligation to resolve evidentiary conflicts and a district court ought not do over those determinations. Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991). To evaluate a medical opinion, the Commissioner considers factors such as the nature, length and extent of the treatment relationship; frequency of examination; supportability and consistency with other evidence in record; and specialization of the physician. 20 C.F.R. § 404.1527(d). The hearing officer generally lends "more weight to the opinions from [the claimant's] treating physicians, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s)." Id. § 404.1527(d)(2). The hearing officer is bound to give "controlling weight" to the opinions of treating

physicians if "well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence in [the] case record." Id. § 404.1527(d)(2). The hearing officer "is **not** required automatically to give controlling weight to **any** 'treating' doctor's report." Rivera v. Sec'y of Health & Human Servs., 986 F.2d 1407, 1993 WL 40850, at *3 (1st Cir. 1993) (table).

Whitzell claims that the Commissioner's finding that her disability was accompanied only by moderate limitations is not supported by substantial evidence because the Commissioner did not accord appropriate weight to the opinions of Dr. Tessier and Dr. Parsons. Whitzell argues that Dr. Tessier's opinion was entitled to controlling weight under the treating physician rule, or, at least, in conjunction with Dr. Parsons's opinion, ought be found more persuasive than opinions of Dr. Mufti and Dr. Sokol.

In the present case, the Commissioner analyzed the opinions of the two treating psychologists Dr. Mufti and Dr. Tessier. A.R. 13-14. Dr. Mufti, who consulted Whitzell between December 2005 and September 2008, diagnosed her with bipolar I disorder characterized by a GAF of 55, consistent with only moderate symptoms. Id. at 169. The opinion of Dr. Mufti was supported by an evaluation conducted by Dr. Sokol in January 2006. Id. at 142-45. Dr. Sokol diagnosed Whitzell with major depressive disorder characterized by a GAF of 60 consistent with only mild

to moderate limitations in her concentration and social functioning. Id. at 144-45. On the other hand, in December 2008, Dr. Tessier opined that Whitzell had symptomatic depression, post-traumatic stress disorder, and personality disorder characterized by a GAF of 45 and severe or moderately severe restrictions in social functioning, daily activities, and the ability to respond appropriately to customary work pressures. Id. at 262-65. In December 2008, Dr. Parsons, an attorney-hired specialist, diagnosed Whitzell with bipolar II disorder and post-traumatic stress disorder, manifesting a GAF of 46 and moderately severe to severe symptoms. Id. at 260-61.

Because the opinions of the two treating psychiatrists regarding the severity of Whitzell's symptoms are inconsistent with each other, neither of them can be said to be "not inconsistent with the other substantial evidence in the record" as section 404.1527(d)(2) requires. Thus, the Commissioner was not obliged to give controlling weight to either of the treating physicians' opinions, but rather had to weigh them considering other evidence in the record.

The Commissioner resolved the evidentiary conflict between Dr. Tessier's and Dr. Parsons' opinions, on one hand, and those of Dr. Mufti and Dr. Sokol, on the other, finding the latter opinions to be more consistent with the record as a whole. Whitzell argues that in light of factors listed in section

404.1527(d), the opposite conclusion is better supported. Specifically, Whitzell turns this Court's attention to the length of her relationship with the various treating physicians and the frequency of their examinations. Whitzell notes that according to her testimony, she saw Dr. Mufti only for fifteen minutes every three months. Id. at 30. According to Dr. Tessier's notes and taking into account all cancelled appointments, however, Whitzell saw him not more often than Dr. Mufti. Id. at 239-53. Moreover, Dr. Mufti started to treat Whitzell approximately one year earlier than Dr. Tessier and was working in close conjunction with her treating physician Dr. Kapogiannis. Id. at 222, 234. Thus, even this factor taken alone does not suggest any error on behalf of the Commissioner. More importantly, none of the factors listed in section 404.1527(d) is determinative, and the decision of the Commissioner will be upheld as long as his conclusion is justifiable in light of the record as a whole.

The record as a whole supports the Commissioner's decision to give more weight to the opinions of Dr. Mufti and Dr. Sokol rather than those of Dr. Tessier and Dr. Parsons. First, as the Commissioner noted, Whitzell's "extensive daily activities including caring for her 10 year old daughter and volunteering as a Little League coach is clearly inconsistent" with the severe symptoms and limitations described by Drs. Tessier and Parsons. Id. at 14. Furthermore, the opinions of Drs. Mufti and Sokol are

supported by the mental residual functional capacity assessment performed by Dr. Barr on December 26, 2006. Based on her review of the record, Dr. Barr concluded that Whitzell had major depressive disorder, but concluded that Whitzell only had significant to moderate limitations in understanding and memory, concentration and persistence, social interaction, and adaptation. Id. at 177-79.

The Court concludes that while the record alternatively might have supported a decision that Whitzell's impairments imposed greater limitations, the Commissioner's determination and resulting denial of benefits are nonetheless supported by substantial evidence and must be affirmed.

**III. CONCLUSION**

For all the reasons stated above, this Court DENIES Whitzell's motion to reverse or remand, ECF No. 12, and GRANTS the Commissioner's motion for an order affirming the decision of the hearing officer, ECF No. 15. Judgment shall enter for the Commissioner.

SO ORDERED.

/s/ William G. Young

WILLIAM G. YOUNG
DISTRICT JUDGE